[Cite as *Ervin v. Willison*, 2014-Ohio-482.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| ROBERT L. ERVIN, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF SHAYLA ERVIN, DECEASED | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | Case No. CT2013-0022 |
| | : | |
| HAROLD WILLISON, ET AL. | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                               Pleas, Case No. CC-2011-0515



JUDGMENT:                      Affirmed



DATE OF JUDGMENT:              February 10, 2014



APPEARANCES:

For Plaintiff-Appellant                    For Defendants-Appellees

ROBERT P. DeSANTO                          MARK W. BASERMAN
432 Center Street                          45 South Monroe Street
Ashland, OH  44805                         Millersburg, OH  44654-1424

*Farmer, J.*

{¶1} On January 31, 2008, eighteen year old Shayla Ervin died after being struck by an automobile while she was crossing the street at a crosswalk on January 26, 2008. She was approximately twenty-five feet short of the curb when she was struck by Harold Willison.

{¶2} The pedestrian crossing was examined and it was discovered that the timing of the "WALK/DON'T WALK" pedestrian signal was not set at the recommended seconds for a pedestrian to safely cross the street. A witness, Brenda Pritt, stated Ms. Ervin entered the intersection while the "DON'T WALK" signal was flashing.

{¶3} On October 6, 2011, appellant, Robert Ervin, individually, and as executor of the estate of Shayla Ervin, deceased, filed a complaint against Mr. Willison and appellees, city of Zanesville and city of Zanesville traffic signal supervisor, Fred Buck, for personal injury and wrongful death. Appellees filed a motion for judgment on the pleadings and summary judgment on November 14, 2013. Prior to a ruling, appellant settled with Mr. Willison. By decision filed March 5, 2013, the trial court granted summary judgment to appellees. A judgment entry reflecting this decision was filed on March 20, 2013.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶5} "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE THERE WAS SUFFICIENT, CREDIBLE EVIDENCE FROM WHICH A JUROR COULD REASONABLY FIND THAT, (1) IN THE PROCESS

OF REPAIRING A PEDESTRIAN LIGHT CROSSING SIGNAL, APPELLEE RECKLESSLY AND NEGLIGENTLY, PROGRAMMED INTO THE SIGNAL DEVICE, A SHORTER CROSSING CLEARANCE TIME THAN ENGINEERING DESIGN CALLED FOR, AND WHICH HAD EXISTED IN THE SIGNAL BEFORE THE REPAIR WAS MADE NECESSARY, AND, (2) THE SHORTER CLEARANCE TIME CREATED INSUFFICIENT TIME FOR PEDESTRIANS TO SAFELY CROSS THE INTERSECTION, AND, (3) SAID INSUFFICIENT CLEARANCE TIME WAS PROXIMATE CAUSE OF THE PLAINTIFF'S INJURY AND DEATH."

II

{¶6} "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHERE THERE WAS SUFFICIENT CREDIBLE EVIDENCE FROM WHICH A JUROR COULD REASONABLY FIND THAT; (1) APPELLEE FRED BUCK WAS EMPLOYED BY THE CITY TO REPAIR TRAFFIC SIGNALS; (2) FRED BUCK HAD NO DISCRETION TO CHANGE OR DEVIATE FROM, THE DESIGNED TIMING OF A PEDESTRIAN SIGNAL LIGHT; (3) FRED BUCK, IN THE COURSE OF HIS EMPLOYMENT, REPAIRED A PEDESTRIAN TRAFFIC SIGNAL RECKLESSLY, AND WITH INDIFFERENCE TO PUBLIC SAFETY; (4) BUCK'S KNOWLEDGE OF THE UNSAFE CONDITION HE CREATED WAS IMPUTED KNOWLEDGE TO HIS EMPLOYER; AND (5) THE DOCTRINE OF RESPONDENT SUPERIOR APPLIES."

III

{¶7} "THE TRIAL COURT ERRED IN FINDING AS A BASIS FOR SUMMARY JUDGMENT, THAT APPELLANT FAILED TO PROVE NEGLIGENT SUPERVISION CLAIMS WHERE THERE WAS SUFFICIENT CREDIBLE EVIDENCE FROM WHICH A

JUROR COULD REASONABLY FIND THAT; (1) THE CITY HAD A CLEAR DUTY TO THE PUBLIC TO PROPERLY REPAIR AND MAINTAIN MANDATED PEDESTRIAN TRAFFIC SIGNALS, (2) THE CITY OWED MEMBERS OF THE PUBLIC, AT A MINIMUM, ORDINARY CARE IN SUPERVISING THE ACTIVITY OF MAINTAINING AND REPAIRING SAID SIGNALS, AND (3) THE CITY'S LACK OF SUPERVISION OVER FRED BUCK AND THE REPAIR AND MAINTENANCE ACTIVITY WAS A CONTRIBUTING, OR SOLE PROXIMATE CAUSE OF APPELLANT DECEDENT'S INJURY AND DEATH."

IV

{¶8}   "THE COURT ERRED IN FINDING THE DEFENDANT, FRED BUCK WAS NOT SERVED A COPY OF THE COMPLAINT AND THAT THE PRESENT LAWSUIT WAS NOT COMMENCED AGAINST BUCK, WHEN THE DEFENDANT, BUCK WAS TIMELY SERVED THE COMPLAINT."

IV

{¶9}   We will address this assignment first as it resolves several issues pertaining to appellee Buck.

{¶10}  Appellant claims the trial court erred in finding a failure of service on Mr. Buck, as he was a city employee and service at City Hall was sufficient.  We disagree.

{¶11}  Appellant's complaint lists Mr. Buck's address as "3910 Dorothy Drive, Zanesville, Ohio, 43701" which is his private residence.  Mr. Buck worked out of the Traffic Signal Division office located at "203 Hamline Avenue in Zanesville" and did not maintain an office at City Hall.  See, Second Aff. of Fred Buck, attached to Appellees' February 19, 2013 Reply Memorandum as Exhibit City SJ Ex. N.  Service of process on

Mr. Buck was made to the Dorothy Drive address and was returned unclaimed. See, Unclaimed Envelope filed October 25, 2011.

{¶12} In his answer filed November 3, 2011, Mr. Buck specifically raised insufficiency of process (Tenth and Eleventh Defenses). There is no indication in the record of any specific service on Mr. Buck at the office on Hamline Avenue or City Hall. Although the city of Zanesville was served at "Zanesville City of c/o Mayor Howard Zwelling, City Hall 1st Fl Rm 105, Zanesville, OH, 43701," Mr. Buck was not specifically served at the City Hall address.

{¶13} In *Akron-Canton Regional Airport Authority v. Swinehart,* 62 Ohio St.2d 403 (1980), the Supreme Court of Ohio found service of process may be made to an individual's business address as long as service comports with the requirement of due process. Due process requires notice be reasonably calculated, under all the circumstances, to reach the interested parties. The *Swinehart* court at 406 noted "certified mail service sent to a business address can comport with due process if the circumstances are such that successful notification could reasonably be anticipated."

{¶14} In this case, service was not made in a manner "reasonably calculated" to reach Mr. Buck. Service to his private residence was returned unclaimed. No further attempts at service were made. Service was not sent to the Hamline Avenue address, and although service was made to City Hall, it was addressed to the city of Zanesville only; it did not include Mr. Buck.

{¶15} Upon review, we find the trial court did not err in dismissing Mr. Buck from the lawsuit.

{¶16} Assignment of Error IV is denied.

II, III

{¶17} Appellant claims the trial court erred in determining appellees' actions were covered by immunity under R.C. Chapter 2744 and were not covered under the exception of R.C. 2744.02(B)(3). We disagree.

{¶18} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

Civ.R. 56(C)  provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶19} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35 (1987).

{¶20} In *Greene County Agricultural Society v. Liming,* 89 Ohio St.3d 551, 556-557, 2000-Ohio-486, the Supreme Court of Ohio explained the three tier analysis required for determining if sovereign immunity applies:

R.C. Chapter 2744 sets out the method of analysis, which can be viewed as involving three tiers, for determining a political subdivision's immunity from liability. First, R.C. 2744.02(A)(1) sets out a general rule that political subdivisions are not liable in damages. In setting out this rule, R.C. 2744.02(A)(1) classifies the functions of political subdivisions into governmental and proprietary functions and states that the general rule of immunity is not absolute, but is limited by the provisions of R.C. 2744.02(B), which details when a political subdivision is not immune. Thus, the relevant point of analysis (the second tier) then becomes whether any of the exceptions in R.C. 2744.02(B) apply. Furthermore, if any of R.C. 2744.02(B)'s exceptions are found to apply, a consideration of the application of R.C. 2744.03 becomes relevant, as the third tier of analysis.

{¶21} R.C. 2744.02 governs immunity for political subdivisions. Subsection (A)(1) states the following:

For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and

proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

{¶22} R.C. 2744.01(2)(C)(e) and (j) state a "governmental function" includes: "[t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds," and "[t]he regulation of traffic, and the erection or nonerection of traffic signs, signals, or control devices."

{¶23} In its judgment entry filed March 20, 2013, the trial court found the following on the issue of immunity:

(6) The City is immune from liability as to governmental functions per Ohio Rev. Code § 2744.02(A)(1). The regulation of streets and the provision of traffic and pedestrian signals are governmental functions per Ohio Rev. Code § 2744.01(C)(2), (e) and (j); as are functions for the common good of all citizens and that promote public safety per Ohio Rev. Code § 2744.01(C)(1), (b) and (c).

(7) Buck is immune from liability as an employee of the City per Ohio Rev. Code § 2744.02(A)(1) and 2744.03(A)(6).

(8) No exception to the immunity per Ohio Rev. Code §
2744.02(A)(1) exists as to Buck under Ohio Rev. Code § 2744.02(B).

(10) The City is immune concerning claims related to traffic signal
timing, as the lights were operating as intended, a design issue for which
immunity applies, and not a repair.

{¶24} Appellant argues the exception under R.C. 2744.02(B)(3) applies sub judice:

Except as otherwise provided in section 3746.24 of the Revised
Code, political subdivisions are liable for injury, death, or loss to person or
property caused by their negligent failure to keep public roads in repair
and other negligent failure to remove obstructions from public roads,
except that it is a full defense to that liability, when a bridge within a
municipal corporation is involved, that the municipal corporation does not
have the responsibility for maintaining or inspecting the bridge.

{¶25} The question is whether this exception applies. We find that it does not.

{¶26} When the subject intersection was widened in 2000, the clearance time for
the pedestrian signal was increased from nine seconds to thirteen seconds. After
repairs were made, the clearance time was returned to nine seconds as appellees
concede. Buck depo. at 32. Appellant argues R.C. 2744.02(B)(3) is applicable
because the thirteen seconds was a design/construction feature of the newly widened

road and the nine seconds existing at the time of the accident was a repair failure. Appellant argues Mr. Buck recklessly or negligently repaired the pedestrian signal and deliberately changed the timing from thirteen seconds to nine seconds. Appellant argues Mr. Buck was responsible for the insufficient timing and had knowledge of the unsafe timing prior to the accident. Appellant concedes there is no direct evidence, but argues inferences lead to these conclusions. See, Appellant's Brief at 18. Appellant argues the city negligently and recklessly supervised Mr. Buck's work.

{¶27} For purposes of determining whether the exception applies, our inquiry is whether maintenance of a pedestrian signal at an intersection qualifies as keeping "public roads in repair."

{¶28} Appellant argues in the definition of "public roads" under R.C. 2744.01(H), traffic control devices are included: " 'Public roads' means public roads, highways, streets, avenues, alleys, and bridges within a political subdivision. 'Public roads' does not include berms, shoulders, rights-of-way, or traffic control devices unless the traffic control devices are mandated by the Ohio manual of uniform traffic control devices." Appellant argues a pedestrian signal is a "traffic control device" as mandated by the Ohio Manual of Uniform Traffic Control Devices (hereinafter "OMUTCD"). Appellant substantiates his claim with the affidavit of Michael W. Schweickart, a registered professional engineer. Said affidavit is attached to appellant's memorandum in opposition as Plaintiff's Exhibit SJ 1. Mr. Schweickart stated: "Based upon my study, the pedestrian signals existing on the south crosswalk of Maple and Brandywine were mandated by the existing OMUTCD."

{¶29}  In *Lang v. Cesnik,* 8th Dist. Cuyahoga No. 60882, 1992 WL 189552, *2 (August 6, 1992), our brethren from the Eighth District found "the timing of traffic signals does not involve the remedying, restoration, or renovation of roads, and is not an actual impediment.  Therefore, we find that it is not encompassed within the meaning of the term 'repair' or 'nuisance' as used in R.C. 27744.02 (sic)."[1]

{¶30}  We agree with the *Lang* reasoning under the specific facts of this case. Appellant has not demonstrated that the faulty timing was anything other than a mistake, and the city did not know of the error until the accident.  The exception under R.C. 2744.02(B)(3) does not apply sub judice.

{¶31}  Assuming arguendo that the timing of the pedestrian signal falls within the exception under R.C. 2744.02(B)(3), we find immunity exists under R.C. 2744.03(A)(3) and (5) which state the following:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-

---

[1]"Nuisance" language was removed from the statute in 2007, prior to the accident sub judice.

making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶32} We note the timing of pedestrian signals is included in Section 4E.10 of the OMUTCD. See, Exhibit City SJ Ex. M, attached to Appellees' November 14, 2012 Motion for Summary Judgment. The OMUTCD lists guidelines and options regarding the length of the walk interval. The section uses the word "should" and not "shall." There are no specific mandates as to the timing of the pedestrian signals. Said section states "the walk interval should be at least 7 seconds in length" with the option that "walk intervals as short as 4 seconds may be used." In the case sub judice, the walk interval was nine seconds.

{¶33} Absent a specific requirement in the OMUTCD manual, the decision in this case to set the walk interval at nine seconds was a discretionary decision which makes appellees' immune, unless the judgment was exercised with malicious purpose, in bad faith or in a wanton or reckless manner. There is nothing to suggest that appellees' judgment or discretion was exercised with malicious purpose or in bad faith or in a wanton or reckless manner.

{¶34} Appellant alludes to some devious action that caused the timing device to be set at only nine seconds. However, there is no genuine issue of material fact raised by such an unsubstantiated inference. The conclusions argued are reached only by building one inference upon another, and therefore fall short of valid circumstantial evidence.

{¶35} Upon review, we find the trial court did not err in granting summary judgment to appellees.

{¶36} Assignments of Error II and III are denied.

I

{¶37} Appellant claims the trial court erred in granting summary judgment to appellees on the issue of proximate cause and the "DON'T WALK/WALK" signal. Given our decisions above, we find this assignment to be moot.

{¶38} The judgment of the Court of Common Pleas of Muskingum County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Wise, J. concur.

SGF/sg 1/8